MALCOLM MACGREGOR, Respondent, *v.* PEAT, MARWICK, MITCHELL & Co., Appellant.

First Department, November 23, 1964.

*William Eldred Jackson* of counsel (*George H. Bailey* with him on the brief; *Milbank, Tweed, Hadley & McCloy,* attorneys), for appellant.

*Murray H. Warschauer* of counsel (*David B. Pollack* with him on the brief; *Graubard & Moskovitz,* attorneys), for respondent.

*Per Curiam.* Defendant appeals from a judgment entered January 3, 1964, in favor of plaintiff in the sum of $34,741.66, and which adjudged that the pension to which plaintiff is entitled is properly computed on the basis of the total compensation received by plaintiff during the last three years of his employment. Such total compensation included fixed salary plus a percentage of the profits.

Plaintiff, an accountant, was so employed by defendant from December 27, 1926, to and including June 30, 1960. By letter dated December 29, 1926, addressed to plaintiff by defendant, defendant confirmed an arrangement for plaintiff's employment at a salary of $4,200 per annum.

In 1929, defendant established a welfare plan for its employees, the cost thereof being borne entirely by defendant. The general description of the plan referred to the principal features as providing " for additional compensation of the members of its staff, for their protection against undue loss of

income through sickness ", etc., and included life insurance for each employee, " the amount, as in the case of the constant bonus, being proportionate to the salary paid and the length of service.''

October 1, 1933, defendant established a welfare plan, effective October 1, 1933, which by its terms expressly superseded and annulled the provisions of the 1929 plan except as and to the extent that such provisions were continued in the 1933 plan. The 1933 plan was designed " for the partial protection of the members of its [defendant's] staff against diminution of income through sickness, accident, and old age '', etc. Life insurance for each employee was to be proportionate to the salary paid and provisions were included in case of temporary or permanent incapacity or retirement for age for employees who joined defendant's staff prior to 1929. The benefits under those clauses were to " *be based upon salary paid, and also, to a certain extent, on the length of service* '' (emphasis added). As in the earlier plan the entire cost of the benefits was to be paid by defendant.

October 1, 1942, plaintiff and defendant entered a written agreement for a period of three years, with yearly renewal options thereafter, whereby plaintiff was employed as " manager '' at a salary of $500 for each period of four weeks, or $6,500 per year. In 1946, plaintiff's salary, according to plaintiff's letter bearing date of November 5, 1949, was adjusted at $9,000 per annum and so remained at the time the letter was written.

July 1, 1951, plaintiff and defendant entered into a written agreement, effective July 1, 1951 to June 30, 1955, whereby plaintiff was employed as a " Principal '' at a salary of $9,020.16 per annum. It was expressly provided, at plaintiff's request, that such salary would not be reduced during the period of the agreement and would be subject to consideration at the time of the defendant's annual salary review. The agreement further provided " [i]n addition thereto '' plaintiff " is to receive as a commission a further distribution equivalent to thirty-five one-hundredths of one per cent (.35%) of the net profits * * * during the continuance of this agreement.'' This agreement was extended at its expiration on a year-by-year basis but at an annual salary of $10,001.52.

By letter dated September 1, 1948, plaintiff had been informed of the fact that pension privileges under the 1933 welfare plan, which up to 1942 were subject to cancellation by defendant, had, in effect, been superseded by the establishment of an irrevocable pension trust in order to provide greater security for those

individuals entitled to pensions. Under the welfare plan of 1933, the retiring employee so entitled would receive a pension "equal to 1% of the average annual salary received for the last three years of active service, multiplied by the number of years' service with the firm". Under the pension plan the annual pension would be "equal to 1% of the *highest* average annual salary received * * * during any three consecutive calendar years." (Emphasis added.)

In the pension trust agreements of 1943 and 1944, it is expressly provided that annual salary shall be deemed "not to include any bonus or incentive compensation payments." There is no indication that prior to the communication of 1948 this provision had been expressly called to plaintiff's attention. In 1955 a pension trust was established by defendant for other eligible employees (i.e., those not in defendant's employment on April 1, 1929, but employed since that date). In such agreement the term "salary" was more extensively defined and contributions to it were to be made by employer and employees. This agreement did not include plaintiff, who was covered by the earlier plans.

As a result of the 1951 agreement between plaintiff and defendant in which plaintiff was employed as a "Principal" and under which he was to receive a stated salary and "[i]n addition thereto" commissions, plaintiff's income thereafter and until his retirement was substantially increased. The commission or profit participation in many years exceeded the stated salary.

Upon plaintiff's retirement he sought to have his pension calculated upon the average of his highest total annual compensation, and it is from the judgment so determining that defendant appeals.

It is apparent from the foregoing recital that the parties always recognized a distinction between salary, bonus, commissions or profit participation. Plaintiff as an experienced accountant was certainly familiar with the distinction. Salary was regarded as fixed compensation. In fact in the 1951 agreement plaintiff expressly requested, and received, inclusion of a provision that the stated salary "shall not be reduced during the period of this agreement and shall be subject to consideration" annually. No such provision was requested or inserted with respect to the provision for profit participation. The true intent of the parties is thus abundantly clear as to what they considered salary (i.e., regular fixed compensation). The record is bare of any proof by plaintiff to the contrary and plaintiff has failed to sustain the burden of establishing a contract to

compute his pension on a basis to include the profit-sharing distribution under the 1951 agreement. Such profit participation was just what the parties considered it to be, an addition to the salary, which varied with the profits of the defendant's firm. Had the defendant sustained losses rather than profits, plaintiff by his action had assured that his fixed compensation, his salary, would not be thereby affected.

The judgment appealed from should be reversed, on the law and the facts, and the complaint dismissed, with costs to appellant.

RABIN, J. P., STEVENS and EAGER, JJ., concur in *Per Curiam* opinion; VALENTE and STEUER, JJ., dissent and vote to affirm on the opinion of COLEMAN, J., at Special and Trial Term.

Judgment reversed on the law and on the facts, with $50 costs to appellant and the complaint dismissed.